

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

July 11, 2024

<u>VIA ECF</u>
The Honorable James L. Cott
United States Magistrate Judge
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York 10007

     Re:    *United States v. Nymiah Branch*, 24 Cr. 180 (JLC)

Dear Judge Cott:

     The Government respectfully submits this letter in advance of the sentencing for defendant Nymiah Branch in the above-referenced matter, which is currently scheduled for July 18, 2024. For the reasons set forth below, the Government respectfully submits that a sentence of three years' probation with a term of home detention within the bottom half of the applicable U.S. Sentencing Guidelines (the "Guidelines") range of 8 to 12 months' imprisonment would be sufficient but not greater than necessary to serve the purposes of sentencing.

     **I.**    **Background**

     NYCHA is the largest public housing authority in the country. (Presentence Report ("PSR") ¶ 8). It provides housing to low- and moderate-income New York City residents and is funded in large part from the U.S. Department of Housing & Urban Development. (*Id.*). NYCHA collectively houses 1 in 17 New Yorkers.[1] From at least March 2014 through March 2019, the defendant was employed as a superintendent at Carey Gardens, a NYCHA housing development located in Brooklyn. (*Id.* ¶ 13). Further, from at least March 2019 through March 2021, the defendant was employed as a superintendent at Red Hook Houses, a NYCHA housing development located in Brooklyn. (*Id*). As a superintendent, the defendant was involved in awarding construction and repair jobs to contractors seeking to be hired for work at these NYCHA properties. (*Id.* ¶ 10). For jobs that were under a certain threshold (often referred to as "no-bid contracts"), the defendant could hire contractors directly without a competitive bid process or other oversight. (*Id.*). After the contractors completed the jobs they were awarded through the no-bid process, the defendant also had authority to determine whether the contractors' work was deemed satisfactory. (*Id.* ¶ 11). Contractors were only paid after the defendant deemed their work satisfactory and submitted the contractors' "statement of services" to NYCHA. (*Id.*). However, rather than submitting contractor work to NYCHA for payment based solely on whether the

---

[1] *See* N.Y.C Housing Auth., "About NYCHA" (last visited July 9, 2024), https://www.nyc.gov/site/nycha/about/about-nycha.page.

contractors had performed the work satisfactorily, the defendant instead submitted contractor work for payment based on the payment of bribes.

Between approximately 2018 through 2022, the defendant accepted a total of at least approximately $4,500 in bribes from four separate contractors for no-bid and other contracts while he worked as a superintendent at NYCHA. (*Id.* ¶ 21). In particular, in 2018, a NYCHA contractor ("CW-5") was awarded a no-bid contract to perform work at Carey Gardens while the defendant served as a superintendent at that facility. (*Id.* ¶ 19). After CW-5 completed the work, the defendant told CW-5 to "see him" and CW-5 subsequently paid the defendant approximately $1,500 in cash. CW-5 made this payment on the understanding that if CW-5 did not, CW-5 would not be paid for the work that CW-5 had performed. (*Id.*). Similarly, in 2018, a NYCHA contractor ("CW-1") obtained a blanket contract, which CW-1 completed in approximately November 2019, to install doors at the Red Hook West development. CW-1 paid the defendant $1,500 so that the defendant, who was superintendent at Red Hook West at that time, would approve CW-1's work as CW-1 understood that if CW-1 did not pay the defendant, CW-1 would not receive payment for CW-1's work. (*Id.* ¶¶ 16-17). Another NYCHA contractor paid Branch between $400 and $500 one or two times in connection with no-bid contracts that Branch awarded the contractor and an additional NYCHA contractor reported that in 2020, he paid Branch approximately $500 twice in connection with no-bid contracts. (*Id.* ¶¶ 20, 21).

The defendant was charged by complaint in connection with this conduct on February 2, 2024 and was arrested on February 6, 2024. (*Id.* at 1).

The defendant's actions were part of a widespread culture of corruption at NYCHA. (Dkt. 6). The Government charged 70 current and former NYCHA employees, including the defendant, with bribery and extortion offenses in a single, coordinated takedown. (*Id.* at 1). Although the majority of these defendants were charged separately, the charging instruments allege that these NYCHA employees received similar bribe amounts from contractors for no-bid contracts. In fact, the required bribe amount (typically between 10 or 20 percent of the contract's value) became well known among contractors because so many NYCHA employees were demanding payments for work. (*Id.* at 1-2).[2]

The impact of this corruption by former and current NYCHA employees was vast: collectively, the 70 defendants are alleged to have received more than $2 million in bribe or extortion payments from NYCHA contractors in exchange for awarding at least approximately $13 million in NYCHA contracts at approximately 96 developments in all five boroughs. (*Id.* at 1).

The defendant is the second of these 70 defendants to be sentenced, although two NYCHA superintendents were previously charged separately. The first of the 70 defendants to be sentenced was John Rivera, who was sentenced to 12 months and one day of imprisonment followed by two years' supervised release on June 28, 2024 by the Honorable Denise L. Cote, U.S. District Judge for the Southern District of New York. *See United States v. Rivera*, No. 24 Cr. 150 (DLC), Dkts.

---

[2] To date, approximately 37 defendants have pleaded guilty or are scheduled to plead guilty to felony charges, and eight defendants have pleaded guilty to misdemeanor charges.

22, 23 (S.D.N.Y. June 28, 2024). Rivera had pleaded guilty to receipt of a bribe by an agent of an organization receiving federal funds, in violation of 18 U.S.C. § 666(a)(1)(B), for accepting a total of approximately $7,500 in bribes in exchange for arranging for certain contractors to receive no-bid contracts from NYCHA worth at least $60,000. *Id.*

## II.     The Defendant's Plea and Guidelines Range

On March 28, 2024, the defendant pleaded guilty to an Information charging one count of intent to defraud the U.S. Department of Housing and Urban Development ("HUD"), in violation of 18 U.S.C. § 1012. (*Id.* ¶¶ 2, 3). Specifically, the defendant was charged with soliciting and accepting a total of at least $4,500 in bribes in exchange for arranging for certain contractors to receive no-bid contracts from NYCHA worth at least approximately $34,000. (*Id.* ¶ 2).

As set forth in the parties' plea agreement and affirmed in the PSR, the defendant's base offense level is 14 pursuant to U.S.S.G. § 2C1.1(a)(1) because he was a public official, and that level is increased by two points because the offense involved more than one bribe. Assuming the defendant clearly demonstrates acceptance of responsibility, a three-level reduction will be warranted pursuant to U.S.S.G. § 3E1.1(a) and (b). A two-point reduction is also applied because the defendant has zero criminal history. Thus, the defendant's applicable offense level is 11. (*Id.* ¶¶ 4(a), 37).

The defendant has zero criminal history points and is therefore in Criminal History Category I. (*Id.* ¶¶ 4(b), 40).

Based on the above calculations, the defendant's stipulated Guidelines range is 8 to 12 months' imprisonment. (*Id.* ¶ 4(c), p. 21). At Guidelines level 11, the applicable fine range is $4,000 to $40,000. (*Id.* ¶ 4(c), p. 21). The Probation Office recommends a sentence of two years' probation. (*Id.* at 21).

The defendant has agreed to pay $4,500 in restitution to NYCHA. (*Id.* ¶ 4(c)).

## III.    Discussion

### A.      Applicable Law

Following *United States v. Booker*, 543 U.S. 220 (2005) and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005), the Guidelines continue to provide a critical touchstone. Indeed, while the Guidelines are no longer mandatory, they remain in place, and district courts must "consult" them and "take them into account" when sentencing. *Booker*, 543 U.S. at 264. As the Supreme Court has stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." *Gall v. United States,* 552 U.S. 38, 49 (2007).

After calculating the Guidelines range, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available"; (4) the Guidelines range

itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants"; and (7) "the need to provide restitution to any victims," 18 U.S.C. § 3553(a)(l)-(7).  *See Gall,* 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant;
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

Although the Court may not presume the reasonableness of a within-Guidelines sentence, the Second Circuit has recognized that "[i]n the overwhelming majority of cases, a Guidelines sentence will fall comfortably within the broad range of sentences that would be reasonable in the particular circumstances." *United States v. Fernandez*, 443 F.3d 19, 27 (2d Cir. 2006); *see also Kimbrough v. United States*, 552 U.S. 85, 108-09 (2007) ("We have accordingly recognized that, in the ordinary case, the Commission's recommendation of a sentencing range will reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." (quotations omitted)).

The Guidelines provide that where, as here, the applicable Guidelines range is in Zone B of the Sentencing Table, the minimum term may be satisfied by a term of imprisonment or a sentence of probation that includes "a condition or combination of conditions that substitute intermittent confinement, community confinement, or home detention for imprisonment." U.S.S.G. §5C1.1.

### B.     A Term of Home Detention Within the Bottom Half of the Guidelines Range Is Necessary in This Case

A sentence of three years' probation with a term of home detention within the bottom half of the applicable U.S. Sentencing Guidelines (the "Guidelines") range of 8 to 12 months' imprisonment would be sufficient, but not greater than necessary, to serve the purposes of sentencing.

*First*, the seriousness of the defendant's conduct and the need to promote respect for the law support imposition of a term of home detention.  The defendant repeatedly betrayed his employer and abused the position of trust that he held, and ultimately betrayed the trust of the residents of Carey Gardens and Red Hook West for which he had responsibility, all in order to enrich himself.  Courts in this District have repeatedly emphasized the harm that these bribery and corruption offenses cause.

Judge Cote, in sentencing a different NYCHA employee to 15 months' imprisonment for accepting bribes in exchange for no-bid contracts, described the offense as "a real betrayal. . . . You betrayed your employer, you betrayed the city, you betrayed the residents of the houses at which you worked.  This was a corruption of your job and your duties.  You were given responsibility and authority, and instead, you used that to get money you had no right to.  And corruption is a corrosive, destructive issue.  People need to have faith in their government.  They need to have faith in their public housing that it's a community resource that can be used to support those in need." *United States v. Figueroa*, No. 22 Cr. 605 (DLC), Dkt. 27 at 17 (S.D.N.Y. Feb. 9, 2023).  In a recent bribery case involving corrupt Drug Enforcement Administration ("DEA") officials, Judge Oetken called bribery of public officials "insidious [because] it undermines the public's faith in our system of justice.  There are a lot of countries around the world where this sort of corruption is routine, it's part of life, everyone expects it.  One of the things that sets our country apart, at least in our aspirations and our ideals, is to be free of this sort of corruption." *United States v. Costanzo*, No. 22 Cr. 281 (JPO), Dkt. 253 at 54 (S.D.N.Y. Apr. 24, 2024).

*Second*, a term of home detention within the Guidelines range is vital to deter others who may seek to engage in similar schemes—a factor that would not be adequately addressed with a time-served sentence.  By charging 70 defendants with this conduct, the Government sought to send a real message that this type of behavior will not be tolerated.  However, this message is likely to ring hollow if these defendants do not face real consequences for repeated abuses of their positions of responsibility over the safety and well-being of some of the most vulnerable New Yorkers.

Prior arrests of individuals engaged in this type of bribery scheme have not ended this type of conduct.[3]  Accordingly, any sentence imposed in this case must send a message to those who seek to illegally profit from their NYCHA positions—or other positions of trust in local, state, or federal government agencies—that such conduct will not be tolerated and that serious consequences will result.

*Third*, while the PSR details the defendant's long employment history at NYCHA and his history as a law-abiding member of society, (*id.* ¶ 51, p. 22), the Court should reject these characteristics as a basis for imposing probation without any form of detention.  The defendant's lack of criminal history is already reflected in his Guidelines range.  Not only was the defendant placed in Criminal History Category I based on his zero-point offender status, but he also received a two-point reduction in his offense level.

The defendant's history of meritorious service also does not distinguish him from any other of the 70 defendants charged with taking bribes while at NYCHA or individuals who commit bribery generally.  It is precisely by virtue of a history of service that bribery defendants are generally able to obtain the position of public trust that they then, in turn, exploit and use to solicit

---

[3] *See* NBC New York, "9 Contractors Charged in 'Brazen' NYCHA Kickback Scheme: Brooklyn DA" (Sept. 20, 2021), https://www.nbcnewyork.com/news/local/crime-and-courts/contractors-expected-to-be-charged-in-alleged-nycha-kickback-scheme-sources/3280939; U.S. Atty's Office, SDNY, "NYCHA Superintendents Plead Guilty To Accepting Bribes" (Nov. 3, 2022), https://www.justice.gov/usao-sdny/pr/nycha-superintendents-plead-guilty-accepting-bribes.

bribes. *See United States v. Fishman*, 631 F. Supp. 2d 399, 403 (S.D.N.Y. 2009). In other words, an otherwise unblemished work history is often part and parcel of bribery and does not take the defendant out of the heartland of bribery offenses or defendants. In fact, it is precisely what is so concerning about the defendant's conduct: by virtue of his prior employment and service, he was entrusted with a position of privilege and responsibility and chose to betray that position on multiple occasions by using it to his own advantage. The Court should not impose probation without any term of detention based on the same history of service that laid the foundation for the defendant's crimes.

*Fourth*, the Government submits that a sentence of probation with a significant term of home detention is appropriate considering the defendant's relative culpability and the sentences that have been imposed in this District on other NYCHA employees who accepted bribes in exchange for awarding no-bid repair contracts. A chart of the applicable Guidelines ranges and sentenced imposed on the defendants sentenced so far is attached hereto as Exhibit A. As reflected in that chart, the defendants sentenced so far have been sentenced to significant terms of imprisonment. Although the Government is not requesting a term of imprisonment here based on the defendant's relative culpability, a sentence of probation without any form of detention would inadequately reflect the seriousness of his offense and the defendant's very serious abuse of power.

Each of these factors weighs in favor of a meaningful sentence that, but for the defendant's early acceptance of responsibility, may otherwise have included a recommendation of a term of home detention within the top half of the applicable Guidelines range, or a term of incarceration. In this case, however, the Government believes that it is appropriate to acknowledge, under Section 3553(a), that the defendant accepted full responsibility for his conduct unusually early. Shortly after the defendant was arrested, the defendant waived indictment, waived discovery, and pleaded guilty to an Information. In the context of a 70-defendant case, this early acceptance is meaningful and saved the Government substantial resources in connection with grand jury practice, discovery, and general case management above and beyond what is applicable in a typical case. The Government acknowledges that the defendant's early acceptance warrants a modest downward adjustment from what the Government would otherwise be requesting. Accordingly, the Government submits that a sentence of probation followed by a term of home detention within the bottom half of the Guidelines range is warranted here.

**IV.     Conclusion**

For the reasons set forth above, the Court should impose a sentence of three years' probation with a term of home detention within the bottom half of the applicable U.S. Sentencing Guidelines (the "Guidelines") range of 8 to 12 months' imprisonment, as well as the agreed-upon restitution.[4]

Sincerely,

DAMIAN WILLIAMS
United States Attorney

by: _____/s/_____
Jerry Fang / Jacob R. Fiddelman / Meredith Foster /
Catherine Ghosh / Sheb Swett
Assistant United States Attorneys
(212) 637-2584/-1024/-2310/-1114/-6522

---

[4] In light of recent Second Circuit decisions, the Government respectfully requests that, for each special condition of supervised release that the Court intends to impose, the Court briefly state its reasons for concluding that each such special condition is "reasonably related" to at least one of the factors set forth in U.S.S.G. § 5D1.3(b). *See, e.g.*, *United States v. Sims*, 92 F.4th 115 (2d Cir. 2024) (vacating special condition and remanding for district court to provide sufficient explanation for imposition of condition); *United States v. Oliveras*, 96 F.4th 298 (2d Cir. 2024) (same); *United States v. Jimenez*, No. 22-1022, 2024 WL 1152535 (2d Cir. Mar. 18, 2024) (summary order) (same).

**EXHIBIT A**
**Sentences Imposed on Related Defendants to Date**

| **Defendant** | **Docket** | **Date** | **Guidelines** | **Sentence** |
|---|---|---|---|---|
| Gibbs, Leroy* | 22 Cr. 534 (CM) | 2/8/23 | 27 to 33 months | 33 months' imprisonment |
| Figueroa, Julio | 22 Cr. 605 (DLC) | 2/9/23 | 12 to 18 months | 15 months' imprisonment |
| Rivera, John | 24 Cr. 150 (DLC) | 6/28/24 | 12 to 18 months | 12 months and one day imprisonment |

---

* Gibbs's case involved an aggravating enhancement for obstruction of justice.